IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RUBEN SETZER                                                          PLAINTIFF

          v.                    Civil No. 10-5151

ARAMARK CORRECTIONAL
SERVICES; and SONIA JENNINGS                                         DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Ruben Setzer, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *in forma pauperis*.  This lawsuit concerns the diet Plaintiff received while incarcerated in the Washington County Detention Center (WCDC) in Fayetteville, Arkansas.

On August 19, 2011, Defendants filed a motion for summary judgment (Doc. 26).  On September 2, 2011, Plaintiff filed a response (Doc. 29) to the motion.  Defendants filed a reply brief on September 9, 2011, and the motion is now ready for decision.

### 1.  Background

Plaintiff filed this lawsuit on August 6, 2010.  At the time, he was incarcerated at the WCDC.  Plaintiff is allergic to carrots.  *Complaint (Doc. 1)* at pg. 4.  He was to be provided a special diet containing no carrots.  *Id*.  However, he maintains carrots were still being put in his food causing rashes, high blood pressure, breathing problems, stomach pain and cramps.  *Id*.  Furthermore, on Easter Plaintiff states ARAMARK did not serve any meals.  *Id*.  Instead, the meals were served by a church and no special diet meals were available.  *Id*.  Finally, on July 31, 2010, Plaintiff asserts that no lunch meal was served.  *Id*.

Sonia Jennings was the lead supervisor for ARAMARK Correctional Services, LLC, at the

WCDC during the time period at issue in this case.  *Defts' Ex.* 2 at ¶ 1.  ARAMARK was under contract with Washington County to provide meals to inmates at the WCDC.  *Id.* at ¶ 14.  "A certified dietician periodically set the menu for all meals served in the [WCDC] in order to ensure that all meals were nutritionally balanced and met caloric requirements sufficient to sustain good health."  *Id.* at ¶ 15.  The menus followed were approved by Washington County.  *Id.* at ¶ 2.

The menus were entered into a computer using software that allowed ARAMARK to adjust the number of meals required daily.  *Defts' Ex.* 2 at ¶ 3.  WCDC officials let ARAMARK know the inmate population each day and someone at ARAMARK would "input that number into the computer program and the program would automatically calculate the types and amounts of food required to prepare the particular menu for that meal.  The program would calculate the precise quantities and types of food required, including even the spices and condiments."  *Id.* at ¶ 5.

ARAMARK personnel printed off the menu and then ARAMARK employees would pull all of the necessary food products from storage.  *Defts' Ex.* 2 at ¶ 7.  Jail trustees prepared and served the meals.  *Id.* at ¶ 8.  The trustees were "closely and continually monitored" by ARAMARK employees to ensure proper preparation and serving.  *Id.* at ¶¶ 9-10.

According to Jennings, "[s]pecific utensils were used to ensure that a full serving of each food item was easily and precisely measured."  *Defts' Ex.* 2 at ¶ 11.  For example, Jennings stated if the menu called for one-half cup of coleslaw, the coleslaw would be served using a one-half cup serving piece.  *Id.*  If the menu called for ten ounces of mashed potatoes, Jennings stated a "ten-ounce ladle, along with a tool to scrape the top of the ladle, would be used to serve the potatoes to ensure precisely ten ounces were served."  *Id.*  Jennings notes that variations of the menu were used to prepare the trays of inmates requiring a special diet such as a diabetic diet.  *Defts' Ex.* 2 at ¶ 13.

-2-

On June 25th, Plaintiff submitted a grievance complaining there were carrots on his "special tray which clearly stated (No Carrots)." *Complaint (Doc. 1)* at pg. 6.  He stated that "someone is clearly absent minded or is trying to cause me physical harm." *Id*.  In response, Sonia Jennings stated that neither herself nor anyone on her staff was intentionally trying to cause him physical harm.  *Id.*  She stated that they tried "every meal and every day to prepare the correct trays for our special needs inmates."  *Id.*  In the future, if he received carrots on his trays, she instructed him to bring it to the attention of the duty officer so that the carrots could be replaced.  *Id.*

On June 26th, Plaintiff complained that he was receiving half servings, sides that "have been processed around carrots" such as cole slaw, and that his cake and bread servings were not like the servings on the regular trays.  *Complaint (Doc. 1)* at pg. 7.  Jennings responded that no one was "purposefully 'messing' up anyone's trays."  *Id.*  If he received a tray that he believed contained inaccurate servings, he was instructed to bring the tray to an officer before he sat down with the tray.  *Id.*  Jennings stated the officer could then bring her a tray and she would personally check the serving sizes.  *Id.*

In his July 4th grievance, Plaintiff complained that he was once again served carrots on his tray.  *Id.* at pg. 5.  The only notation in the area of the grievance form for a response says:  "Forward Armark."

## 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once

a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants maintain they are entitled to judgment in their favor for a number of reasons. First, they maintain § 1983 claims do not apply to ARAMARK or its employees.  ARAMARK asserts it is a contracting private service provider with no penal responsibilities.  Second, they maintain all claims against ARAMARK should be dismissed because there is no respondeat superior liability.  Third, Defendants argue that Plaintiff unsubstantiated claims, even if true, are not significant enough to be constitutionally actionable.  Fourth, Defendants asserts that Plaintiff did not suffer an injury sufficient enough to support a claim of constitutional dimension.  They state there is no medical evidence casually linking the purported rashes, high blood pressure, breathing problems, or stomach pain and cramps to the consumption of food prepared by Defendants.

### (A).  State Action

ARAMARK maintains that a contracted food service provider for a detention facility cannot

-4-

be held liable under § 1983 because it is not a state actor.  I reject this argument.  In *West v. Atkins*, 487 U.S. 42, 57 (1988), the Supreme Court concluded that a physician under contract to provide medical services to inmates at a state prison was a state actor because his function was could fairly be held attributable to the state.    The same reasoning applies here.  Washington County has a constitutional obligation to provide nutritionally adequate meals to the inmates of the WCDC.  Washington County has delegated this obligation to ARAMARK and ARAMARK contractually assumed this obligation.  *See Price v. Suarez* No. 1:09-cv-0051, 2011 WL 635225 (D. Utah Feb. 11, 2011); *Ingram v. Hall*, 2010 WL 1727865, 7 (M.D. Tenn. March 31, 2010); *Lucas v. Aramark Corrections Food Service*, 2010 WL 59194, 1 (W.D. Ky. Jan. 5, 2010).

### (B).  Respondeat Superior Theory of Liability

Plaintiff concedes Defendants cannot be held liable on the basis of respondeat superior.  However, Plaintiff maintains Defendants are directly liable for failing to supervise, direct, or control the actions of the subordinates who caused the injury.

On the record before me, I cannot say that Defendants are entitled to summary judgment because no theory of liability against them is stated.  Defendants do not deny that Plaintiff was allergic to carrots or that he needed a special diet because of this food allergy.  While Defendants provided Jennings' affidavit in support of their motion, the affidavit does not mention the specific diet or menu that was utilized for Plaintiff's meals, if one was in fact utilized.  There is no evidence before the Court to indicate how food allergies in general were addressed.  Among other things, this could have included changes to the menu, the substitution or addition of food items to ensure caloric needs were met, or the training of the inmates to avoid eating anything containing the food they were allergic to.  Defendants prepared the menus, provided all food supplies, and "closely and

-5-

continually" monitored the preparation of all food.  I cannot say on the record before me that there is no basis on which Defendants may be held liable.

### (C).  No Actual Injury

Defendants maintain they are entitled to judgment as a matter of law because there is no evidence Plaintiff suffered an actual, physical injury, which they maintain is necessary to establish he did not receive nutritionally adequate meals.  Instead, they maintain they are entitled to judgment in their favor because Plaintiff has provided no medical evidence to support his claims that these conditions were causally related to the consumption of food they prepared.  Plaintiff, however, argues the presence of carrots in his food caused rashes, high blood pressure, breathing problems, stomach pain and cramps.

In this case, as noted above, Defendants provided the Court with no information about the specific diet afforded Plaintiff in view of his food allergy.  While there can be variations in the severity of food allergies, I believe it is undisputed that the body produces some type of negative physical response when a person allergic to a food item eats that food item.[1]  Certainly, on the record before me, I cannot say that there is no genuine issue of fact as to whether Plaintiff suffered a "physical injury" as a result of ingesting carrots or food made with carrots.

### 4.  Conclusion

For the reasons stated, I recommend that the Defendants' motion for summary judgment (Doc. 26) be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in**

---

[1]"Food allergy is an abnormal response to a food triggered by your body's immune system.  Allergic reactions to food can sometimes cause serious illness and death."  http://www.nlh.gov/medlineplus/foodallergy.html (accessed November 21, 2011).

which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 22nd day of November 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE